## Childers v. Haynes et al.

(Decided March 22, 1929.)

W. K. STEELE for appellant.

RUSSELL VANOVER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

This appeal involves the title to a certain tract of land in Pike county. The same tract of land was involved on a former appeal to this court in the case of Childers v. York, 187 Ky. 332, 218 S. W. 1027, but no more was decided in that case than the question of possession. York and Vanover had instituted a suit against Childers to quiet their title to the land described in their petition. Childers had denied their ownership and had set up claim to about 50 acres of the land himself. York and Vanover were not in the actual possession of the land, and this court held that they could not maintain an action of quia timet without actual possession. When the case was remanded they dismissed their petition. York conveyed his one-half interest in the land to Vanover. Vanover conveyed a half interest in the land to his daughter, Marcella Haynes, one of the appellees on this appeal. His daughter moved within the exterior lines of the boundary of land claimed by them and had resided there continuously until the trial of this case in the lower court.

Vanover and his daughter instituted another suit against Childers to recover from him the value of certain trees which he had cut, and to quiet their title to the tract of land described in their petition. After the suit was instituted, Vanover died leaving by will the other half interest in the lands to his widow, who, by proper orders or revivor, was substituted as a plaintiff. Childers contented himself with denying that the appellees were the owners of about 50 acres of the land inclosed within their exterior boundaries, but he did not set up ownership in himself. Proof was heard, and the chancellor adjudged that appellees were the owners of the land, quieted their title, and rendered judgment against Childers for $115, the value of the timber cut on the 50 acres which Childers denied appellees owned.

The question is whether appellees have shown themselves to be the owners of the 50 acres described by Childers in his answer, either by paper title or by adverse possession. The boundary set up in their petition is as follows: "On Elkhorn Creek, on the North side of Cumber-

land Mountain and beginning on a dog wood, on the grave yard hill; thence running to an ash and beech; thence running up the mountain to a double poplar; thence running a straight line to the Lime Stone Cliff; thence running down the mountain with the Lime Stone Cliff to Cedar Cliff; thence down the mountain to two sugar trees; thence North 24 West 80 poles to an ash and beech; and sugar trees; thence running with the *knowles* to the grave yard point; thence down the point to the dogwood, to the beginning.''

One must be struck with the indefiniteness of this boundary by a casual reading of it. It lies at some point on Elkhorn creek, unnamed, on the north side of Cumberland Mountain, and begins on a dogwood, on the Grave Yard Hill. The dogwood is not located and there is nothing from which its location may be determined. The next call is running to an ash and beech without either course or distance, and likewise the next line runs up the mountain to a double poplar, and again there is neither course nor distance. After the line reaches the double poplar, the course is a straight line to the Lime Stone Cliff without distance, and from there the line runs down the mountain with Lime Stone Cliff to Cedar Cliff and then further down the mountain to two sugar trees. The only course and distance given in the entire boundary is a line running from the two sugar trees north 24 west 80 poles to an ash and beech. The next line is with the knolls to the Grave Yard Point, and thence down the point to the beginning. It may be that those in the neighborhood could identify such a boundary, but it is exceedingly difficult to see how any witness could locate the exterior boundaries from the description given in the petition. The deed from Roscoe Vanover to the appellee Haynes does not attempt to describe the land other than by a reference to a deed executed by Begley to him and York. The deed from York to Vanover does not describe the land except by reference to the same deed. The deed from Begley to York and Vanover, executed on July 19, 1907, contains this description: ''Beginning at the foot of the Grave Yard Hill at a dogwood; thence with Isaac Cantrill's line western direction to two chestnut sprouts; thence a straight line a western direction with Isaac Cantrill's line to a buckeye; thence a southwestern direction with James Roberts' line to a stake or stone; thence a straight

line to the Lime Stone Cliff; thence with the Lime Stone Cliff to the Cedar Cliff; thence a straight line a northern direction to an ash and beech corner; thence running down the mountain a northern direction to a stake and running with the *knowles* to the top of the Grave Yard Hill; thence to a dogwood at the foot of the Grave Yard Hill, the beginning, except about forty acres sold to Marion Hylton, containing one hundred acres, more or less.''

The boundary in the deed to the other half interest executed by Begley to York and Vanover on April 21, 1906, is materially different from the boundary in the deed wherein she conveyed the first half interest.

The land was conveyed to Begley in 1890, by Hiram Cantrill. The boundary in this deed is substantially the same as the boundary in the first deed executed by Begley to York and Vanover, but the land is particularly designated as the old Abraham Cantrill land, excepting therefrom 40 acres, but the deed calls for 240 acres. Jesse Roberts conveyed the land to Hiram Cantrill, and there are material discrepancies in the boundary given by him and in the boundary given by Hiram Cantrill when he sold the land. Roberts stated that the land contained 100 acres and was the old Abraham Cantrill land, while Hiram Cantrill designated it as the same tract of land, but stated in his deed that it contained 240 acres. The land was conveyed to Jesse Roberts in 1872 by Jonathan Elswick, Reuben Cantrill, and Isaac Cantrill. The boundary in that deed is as follows: ''Beginning on a dogwood standing in a rocky flat; thence running west to a chestnut, south to Lime Stone *Clift;* thence east to Cedar *Clift;* thence running down branch including the water to a beech and sugar tree; thence northwest to the top of the grave point; thence to the beginning, including all of the land owned by Abraham Cantrill, deceased.''

The grantors in the last-mentioned deed obtained title to the land through the will of Abraham Cantrill. Abraham Cantrill had two patents for 50 acres each. One was issued in 1845, and the other issued in 1837. The boundary to each of these patents is given by metes and bounds.

Considering the paper title alone, it is very clear that if any boundary can be established, it must be the boundary as given in the two patents to Abraham Cantrill. The paper title covers no more than this, and it seems to be admitted that the boundaries of the two patents do not include the land which the appellant alleges the appellees

do not own. It is clear from the evidence that those who have owned the Cantrill patents have claimed beyond the boundaries of those patents, but there is little, if any, evidence of adverse possession outside of the patents. The proof tending to establish adverse possession outside of the patent boundaries is meager. It does not measure up to the requirements of the law, even if it should be conceded that those residing under a deed on the patents could extend their boundaries by adverse possession beyond the patents without pedis possessio. It is unnecessary to go in to that question, as, regardless of the rule of law governing such matters, there is no proof which establishes that the land outside of the patent boundaries has been held adversely by anyone. Childers does not claim to have any title to the land, but appellees must recover on the strength of their own title, and, as they showed no title to the particular land on which the timber was cut, they were not entitled to a judgment against Childers, and certainly they were not entitled to have their title quieted without showing ownership in themselves, either by paper title or by adverse possession, and they failed to show either.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.